UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOMANETICS CORP.,

        Plaintiff,

v.

CAS MEDICAL SYSTEMS, INC.,

        Defendant.
                                       /

Case No. 09-13110

HONORABLE SEAN F. COX
United States District Judge

## 2nd AMENDED OPINION & ORDER DENYING PLAINTIFF'S MOTION TO STRIKE OR DISMISS [Doc. No. 22][1]

Plaintiff Somanetics Corporation ("Somanetics") filed this patent infringement action against Defendant CAS Medical Systems, Inc. ("CAS") on August 7, 2009 [Doc. No. 1]. CAS filed its answer and affirmative defenses on October 19, 2009 [Doc. No. 12]. The matter is before the Court on Somanetics' Motion to Strike [Doc. No. 22], wherein Somanetics seeks an order striking CAS's affirmative defenses and dismissing CAS's counterclaims. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to E.D. MICH. L.R. 7.1(e)(2). For the reasons below, the Court **DENIES** Plaintiff's motion [Doc. No. 22].

### BACKGROUND

Somanetics is a Michigan corporation with its principal place of business in Troy, Michigan, and is engaged in the business of manufacturing devices used by physicians and

---

[1] This Opinion & Order was originally published on February 25, 2010 [*See* Doc. No. 32], and was amended on May 17, 2010 [*See* Doc. No. 39], to correct a typographical error in the introductory paragraph. This 2nd amendment corrects a typographical error in the title, the remainder of the Court's Opinion & Order remains unchanged.

1

nurses to monitor the oxygen levels in a patient's tissues. CAS is a Delaware corporation with its principal place of business in Branford, Connecticut, and is a competitor of Somanetics in the oxygen level monitoring industry.

Somanetics alleges that early technologies in its field "were only capable of providing whole-body measurements. This meant that a dangerously low oxygen level could go undetected by doctors if it existed only in a certain organ or region of the body." [Pl.'s Br., Doc. No. 22, pp.1-2]. Recognizing this deficiency in its industry:

> Somanetics designed, developed, and commercialized a revolutionary device (called the INVOS system), which launched in the U.S. in 1998, and allows physicians and nurses to continuously monitor the blood oxygenation levels at specific, targeted locations in a patient's body. Somanetics diligently sought and obtained patent protection for its innovative technology, including U.S. Patent No. 5,482,034 ("the '034 Patent), U.S. Patent No. 5,902,235 ("the '235 Patent"), and U.S. Patent No. 6,615,065 ("the '065 Patent) (collectively, "the patents-in-suit").

*Id.* at p.2.

In 2007, CAS launched a product intended to compete with Somanetics' INVOS system, called the FORE-SIGHT, which Somanetics argues infringes on its patented technology. Somanetics filed suit against CAS on August 7, 2009 [*See* Complaint, Doc. No. 1], alleging that CAS infringed against the '034 [Count I], '235 [Count II] and '065 [Count III] Patents in violation of the Lanham Act, 35 U.S.C. § 271. Somanetics also advances claims for false advertising [Count IV] in violation of 15 U.S.C. § 1125(a)(1)(B) and common-law claims of unfair competition [Count V] and trade libel [Count VI].

CAS filed its "Answer, Affirmative Defenses, and Counterclaims" [Doc No. 12] to Somanetics' Complaint on October 12, 2009. In that document, CAS alleges several affirmative defenses, three of which are relevant to the instant motion: the defenses of unclean hands and of

2

patent misuse, [*See* Def.'s Affirmative Defenses, Doc. No. 12, p.5, ¶¶7,8], and that the patents are unenforceable due to Somanetics' fraud and inequitable conduct. *Id*. at ¶12. CAS also filed four counterclaims against Somanetics, alleging antitrust violations under the Sherman Act, 15 U.S.C. § 1 *et seq*. In particular, CAS argues that the following conduct represents evidence of Somanetics' fraud in its prosecution of the '065 Patent before the PTO:

The Agreement Offering the INVOS 4100 For Sale.

During Somanetic's prosecution of the '065 Patent before the PTO, CAS alleges that Somanetics failed to disclose the fact that it had offered the INVOS for sale more than one year beforehand. On September 22, 1997, Bruce J. Barrett - one of the inventors of the INVOS, and CEO of Somanetics - allegedly executed an agreement ("the Agreement") with China Equities, Ltd., for the distribution of "50 units of the INVOS 4100 Oximeters at a price of USD 5,200/unit." [Def.'s Counterclaim, Doc. No. 12, ¶¶21, 22]. Somanetics issued a press release regarding the Agreement on October 9, 1997. *Id*. at ¶24. This Agreement was entered into more than one year prior to the October 13, 1998 priority date claimed by the '065 Patent, and Somanetics' failure to disclose the Agreement is alleged by CAS to be fatal to the patentability of the '065 Patent. *Id*. at ¶¶26-27.

The Scholarly Article.

In May of 1998, CAS alleges that Somanetics contributed to an article ("the Article") entitled "Transcranial Optical Spectroscopy - A comparison of the TOS 96 and INVOS 3100 cerebral oximeters," published in *Biomedizinsche Technik* (Vol. 43, pp.133-136). *Id*. at ¶34. The article's synopsis states "[w]e evaluated two user-friendly, commercially available transcranial cerebral oximeters (TOS 96, Tostec, Tokyo, Japan and INVOS 3100, Somanetics,

3

Troy, USA) for use in adults." *Id*. at ¶36. Somanetics was aware of the article - as they contributed to it - prior to its prosecution of the '065 Patent, but despite the its relevance, CAS alleges that Somanetics intentionally failed to disclose the Article to the PTO. *Id*. at ¶¶40-43.

<u>The IEEE Article About the TOS 96, and the TOS 96 Manual</u>.

CAS also alleges that evidence was available to the general public regarding the TOS 96 one year prior to the '065 Patent's prosecution. Specifically, the TOS 96 was described in an article entitled "A New System for Noninvasive Measurement of Cerebral Regional Oxygen Supply," in the Proceedings of the 18th Annual International Converence of the IEEE Engineering in Medicine and Biology Society, held October 31 - November 3, 1996, Vol. 1 pp.194-195 ("the IEEE Article"). *Id*. at ¶47. The IEEE Article describes oxygen saturation and blood tissue experiments using the TOS 96, as well as clinical measurement of cerebral regional oxygenation and volume of hemoglobin, the claimed invention in the '065 Patent. *Id*. Tostec created an English-language user's manual for the TOS 96 more than one year prior to the prosecution of the '065 Patent, which describes the TOS 96's ability to monitor cerebral oxygen levels from multiple regions simultaneously. *Id*. at ¶¶50-55.

<u>Somanetics' Instant Motion</u>.

Somanetics filed the instant motion on November 19, 2009 [Doc. No. 22], seeking an order striking CAS's affirmative defenses as 'insufficient defenses' under Fed. R. Civ. P. 12(f), because CAS failed to sufficiently plead those defenses under Fed. R. Civ. P. 8(a) and 9(b). [Pl.'s Br., Doc. No. 22, p.2]. Somanetics also seeks dismissal of CAS's Sherman Act counterclaims for failure to state a valid claim under Fed. R. Civ. P. 12(b)(6).

STANDARD OF REVIEW

A "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions "are generally regarded with disfavor because of the limited importance on pleading in federal practice, and because they are often used as a delaying tactic." *United States v. Quadrini*, 2007 WL 4303213, *3 (E.D. Mich. Dec. 6, 2007), quoting *Quintani v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2003).

A three-part test assists courts in deciding whether to strike an affirmative defense:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge.

*Williams v. Provident Investment Counsel, Inc.*, 279 F.Supp.2d 894, 904-05 (N.D. Ohio 2003).

Motions to dismiss are governed by FED. R. CIV. P. 12(b)(6), which require the Court to treat all well-pleaded allegations in the complaint as true. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case. *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

ANALYSIS

In the instant motion, Somanetics argues that the Court should strike CAS's affirmative defenses of inequitable conduct, patent misuse, and unclean hands due to CAS's alleged failure to effectively plead those affirmative defenses. Somanetics also seeks dismissal of CAS's antitrust counterclaims for failure to state a claim upon which relief can be granted. The Court finds no merit in these arguments, and therefore **DENIES** Somanetics' motion [Doc. No. 22] in its entirety.

I. CAS's Affirmative Defense of Inequitable Conduct.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity." "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Whether inequitable conduct has been pled with particularity under Rule 9(b) is a question governed by Federal Circuit law. *Id*. at 1318, citing *Cent. Admixture Pharm. Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007).

A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b). *Exergen*, 575 F.2d at 1326-27. The Federal Circuit in *Exergen* elaborated as follows:

> For example, in a case where inequitable conduct was alleged on the basis that an applicant "failed to disclose all the relevant prior art known to it," we found this allegation deficient because it did not identify the specific prior art that was allegedly known to the applicant and not disclosed. *Cent. Admixture*, 482 F.3d at 1356-57 (internal quotation marks omitted). In that case, the accused infringer also alleged that the applicant "sought to mislead the [PTO] regarding the relationship between the claimed invention and the prior art" "by manipulation of various measurements and units." *Id*. at 1356 (internal quotation marks omitted). This pleading, too, was deficient because it failed to identify "what 'measurements and units' were manipulated, or how the manipulation was meant to mislead the PTO." *Id*. at 1357.
>      \*\*\*\*\*
> *Based on the foregoing. . . we hold that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.*

*Exergen*, 575 F.3d at 1327 (emphasis added).

Although *Exergen* was only recently decided by the Federal Circuit, a number of federal district courts have already applied the *Exergen* "who, what, when, where, and how" test to

6

evaluate inequitable conduct affirmative defenses. *All of these district court holdings found that inequitable conduct affirmative defenses were sufficiently pled* - on far fewer facts than those advanced by CAS in their instant counterclaim - to survive a Rule 9(b) inquiry.

    A. *WesternGeco*.

In *WesternGeco v. Ion Geophycisal Corp.*, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009), the Southern District of Texas denied a motion to dismiss inequitable conduct claims. WesternGeco claimed that "Ion had actual or constructive knowledge of a [scholarly] paper" which disclosed similar technology as that in Ion's patent, and that "Ion failed to disclose this prior art. . . to the PTO. A reasonable patent examiner would have found this information highly material to the patentability of the 992 patent claims." *Id.* at *6 (internal quotations omitted).

In denying Ion's motion to dismiss, the district court held as follows:

> The heightened pleading requirements of Rule 9(b) do not require that WestenGeco definitively prove the merits of its claim. *What is determinative here is that Ion was given fair notice of the basis for WesternGeco's inequitable conduct defense*. The Court also notes that WesternGeco's inequitable conduct claims *go to the heart of the issue disputed in this case* - namely inventorship of the technology at issue. The court therefore finds Ion's assertions that it has been inadequately informed of the basis of WesternGeco claims that Ion acted unlawfully before the PTO somewhat disingenuous.

*Id.* at *7 (emphasis added).

    B. *Power Integrations, Inc.*

In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2009 WL 4928024 (D. Del. Dec. 18, 2009), the District of Delaware struck some, but not all, of the plaintiff's amended defenses and counterclaims. With regard to the claims in which the district court found the plaintiff's pleadings sufficient, the district court offered the following analysis:

> Power's allegations against inventor Yang sufficiently allege the who, what,

7

> where, when, and how of his purported inequitable conduct. The "who" is Tom
> Yang, who is the sole named inventor of the '972 patent and was also a
> participant in the prosecution of that patent. The "what" of Yang's allegedly
> inequitable conduct is his alleged failure to disclose material prior art - Power's
> '876 and '366 patents and the Rhakala article, with its references to two of
> Power's. . . products - to the PTO during prosecution. The claim charts power
> appended to the Counterclaims clearly identify "where" in the alleged prior art the
> material references can be found, and further identify the limitations in the '972
> patent to which they correspond. Finally, Fairchild concedes that Power has
> satisfied the "when" and "how" requirements.

*Id*. at *8. The court then held that "it is reasonable to infer that Yang would have actually known of these three pieces of prior art since he explicitly distinguished them in the background sections of two co-pending patent applications." *Id*.

       C.  *HTC Corporation*.

In *HTC Corp. v. IPCom Gmbh & Co.*, 2009 WL 4363206 (D.D.C. Dec. 3, 2009), the federal district court for the District of Columbia denied a motion to strike inequitable conduct counterclaims. *HTC Corp*. held that information withheld from the PTO "is material if it tends to prove that the applicant's claim is unpatentable or challenges a position the applicant takes in asserting the patentability of his claim." *Id*. at *3, quoting 37 C.F.R. § 1.56(b). "The threshold showing of materiality. . . can be met by showing a reasonable examiner would have considered such information important in deciding whether to allow the application." *Id*., citing *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 176 Fed.Appx. 117, 118-20 (Fed. Cir. 2006).

Turning to the question of whether the defendant sufficiently pled an inequitable conduct affirmative defense, *HTC Corp*. held as follows:

> HTC's Amended Answer and Counterclaims identify three precise documents as
> the prior art that was not submitted to the PTO. HTC specifically accuses certain
> named inventors of the '751 Patent, and explains where, when, and how these
> inventors allegedly became aware of the documents that were withheld from the
> PTO. These allegations clearly provide sufficient notice to IPCom to allow it to

8

prepare its defense. Furthermore, HTC has satisfied *Exergen*'s "who, what, when, where, and how" standard with respect to pleading inequitable conduct.

*Id.* at *4. *HTC Corp.* also dismissed plaintiff's argument that the prior art references at issue were "lengthy, and HTC has not proven that the named inventors read the particular pages of the standards documents that are relevant." *Id.* "Such arguments," to the district court in *HTC Corp.*, "confuse the burdens of proof at trial with the pleading requirements of Rule 9(b)." *Id.*

### D. *Konami Digital Entertainment*.

In *Konami Digital Entertainment Co., Ltd. v. Harmonix Music Systems, Inc.*, 2009 WL 5061812 (E.D. Tex. Dec. 14, 2009), the Eastern District of Texas denied a motion to dismiss and to strike allegations of inequitable conduct. The "who" element of *Exergen* was met where the pleadings "identified specific individuals that it accuses of withholding material prior art and violating a duty of candor to the PTO." *Id.* at *2. The "what" and "where" elements were also met through "charts of potentially invalidating Konami prior art games - on a claim-by-claim and limitation-by-limitation basis." *Id.* The pleadings also point out "why a reasonable examiner would have considered the withheld reference important to the patentability of a claim." *Id.* Thus, the *Konami* court found that the defendant "provides a consistent set of *allegations that disclose both its theory of inequitable conduct and the individuals it alleges have violated their duty of candor to the PTO*." *Id.* at *3 (emphasis added).

### F. The Instant Case.

In light of *WesternGeco*, *Power Integrations*, *HTC Corp.*, and *Konami*, CAS's inequitable conduct counterclaims and affirmative defenses are sufficient under the *Exergen* standard. The Court will consider each of these alleged failures to disclose material information to the PTO in turn.

9

1. The Agreement.

CAS sufficiently alleges that Somanetics committed inequitable conduct by failing to disclose the Agreement, offering for sale Somanetics' INVOS 4100 Cerebral Oximeter more than a year before filing the application for the '065 Patent. As argued in its response brief, CAS has sufficiently pled:

- **Who** - Bruce Barrett, signatory of the Agreement, inventor of the '065 Patent, and President and CEO of Somanetics, and the other inventors (Messrs. Gonopolsky and Scheuing) who deliberately failed to disclose the Agreement to the Patent Office. *See* Answer, Affirmative Defenses and Counterclaims (the "Pleadings"), ¶¶ 16, 20-21, 26, 28-29;
- **What** - the Agreement is sufficiently identified by its title, parties, and date. *See* the Pleadings, ¶21;
- **When** - CAS identified the execution date of the Agreement, and the issue date of two relevant press releases related to the Agreement. *See* the Pleadings, ¶¶21, 23-24;
- **Where** - CAS identified and quoted material portions of the Agreement offering for sale Somanetics' INVOS 4100 Cerebral Oximeter. *See* Pleadings, ¶¶22, 25, 27; and
- **How** - CAS plainly articulated why a reasonable examiner would consider the Agreement material in determining whether the invention claimed in the '065 Patent is patentable. *See* Pleadings, ¶¶25-27, 32.

[Def.'s Br., Doc. No. 28, p.4]. Nothing more is required under *Exergen*.

Though Somanetics argues that CAS failed to "identify which claims of the '065 patent are allegedly rendered unpatentable by the Agreement. . . ," [Pl.'s Br., Doc. No. 22, p.7], this simply is not the case - CAS identified which features of the INVOS 4100 Cerebral Oximeter are relevant [*See* Doc. No. 12, ¶¶22, 25, 27], and how the PTO would have used the omitted information. *Id*. at ¶¶25-27, 32.

Somanetics' arguments against CAS's claims regarding the Agreement ring somewhat hollow. As CAS argues in their response brief:

*the Agreement is for its own product*, and Somanetics has claimed that the INVOS

10

4100, offered for sale more than a year before the '065 Patent application, is the commercial embodiment of the claimed invention. Undoubtedly, Somanetics is well aware of the features of its own product, and what claims of the '065 Patent cover that product.

[Def.'s Br., Doc. No. 28, p.5 (emphasis in original)]. Somanetics' arguments to the contrary are without merit.

2. The Article.

CAS sufficiently alleges that Somanetics committed inequitable conduct by failing to disclose the Article - to which Somanetics is alleged to have contributed - which compares Somanetics' INVOS 3100 Cerebral Oximeter with another competing product, the TOS 96, and which embodies the invention claimed in the '065 Patent. As argued in their response brief, CAS has sufficiently pled:

- **Who** - Somanetics provided "feedback and stimulating discussions" in the preparation of the Article and the inventors (Messrs. Barrett, Gonopolsky and Scheuing) who deliberately failed to disclose the Article to the Patent Office. *See* the Pleadings, ¶¶39-40, 42-44;
- **What** - the Article and its publication information. *See* the Pleadings, ¶34;
- **When** - the publication date in May 1998. *See* the Pleadings, ¶34;
- **Where** - material portions of the Article evaluating Somanetics' own product and the TOS 96, both cerebral oximeters. *See* the Pleadings, ¶¶35-37; and
- **How** - why a reasonable examiner would consider the Article material. *See* the Pleadings, ¶¶38, 41, 61.

[Def.'s Br., Doc. No. 28, p.7]. As with CAS's pleadings regarding the Agreement, nothing more is required under *Exergen*.

Though Somanetics argues that CAS failed to identify which claims are disclosed in the Article, where the relevant information is found in the Article, why the Article is not cumulative, or how the examiner would have applied the Article to the claims of the '065 Patent [*See* Pl.'s

11

Br., Doc. No. 28, p.8], this simply is not the case. CAS identified where relevant information is found in the Article [*See* Doc. No. 12, ¶¶36-37] and how the PTO would have used that information. *Id*. at ¶¶38, 41. As stated by CAS in their reply brief:

> Somanetics does not need CAS, for purposes of notice pleading, to explain why a three page article comparing Somanetics' product to a pre-existing product that embodies the invention claimed in the '065 Patent is not cumulative or how the examiner would have applied it.

[Def.'s Br., Doc. No. 28, p.8]. Somanetics' arguments to the contrary lack merit.

### 3. The IEEE Article and the TOS 96 Manual.

CAS sufficiently alleges that Somanetics committed inequitable conduct by failing to disclose the IEEE Article and the TOS 96 Manual, both of which are alleged to have been material prior art precluding the issuance of the '065 Patent. As argued in their response brief, CAS has sufficiently pled:

- **Who** - Somanetics and the inventors (Messrs. Barett, Gonopolsky and Scheuing), who were aware of the Article, were also aware of or should have been aware of the IEEE Article and the TOS 96 Manual, and deliberately failed to disclose them to the Patent Office. *See* the Pleadings, ¶¶39-40, 42, 45, 56-57, 59;
- **What** - the IEEE Article and the TOS Manual. *See* the Pleadings, ¶¶47, 50;
- **When** - the presentation and publication date of the IEEE Article, and the creation and publication of the TOS 96 Manual. *See* the Pleadings, ¶¶47-48, 50-52, 54;
- **Where** - material portions of the IEEE Article and the TOS 96 Manual describing the TOS 96 cerebral oximeter of which Somanetics and the inventors were aware from the Article. *See* Pleadings, ¶¶35, 47, 53, 59; and
- **How** - why a reasonable examiner would consider the IEEE Article and the TOS 96 Manual material. *See* Pleadings, ¶¶49, 55, 59-61.

[Def.'s Br. Doc. No. 28, p.11]. As with CAS's pleadings regarding both the Agreement and the Article, nothing more is required under *Exergen*.

Though Somanetics argues that CAS failed to allege facts that connect the IEEE Article or the TOS 96 Manual to the claims of the '065 Patent [*See* Pl.'s Br., Doc. No. 28, p.16], this simply is not the case. CAS identified what relevant information is found in the IEEE Article and in the TOS 96 Manual [*See* Doc. No. 12, ¶¶35, 47, 53, 59] and how the PTO would have used that information. *Id*. at ¶¶49, 55, 59-61. Somanetics' arguments to the contrary lack merit.

4. The '235 Patent's Allegedly False Declaration.

CAS sufficiently alleges that Somanetics committed inequitable conduct by submitting a false declaration in their prosecution of the '235 Patent. Though Somanetics argues that CAS failed to allege acts identifying who submitted the false declaration, what was false about the declaration, or how the false declaration is material to the patentability of the '235 claims [*See* Pl.'s Br. Doc. No. 28, p.17], this simply is not the case.

Regarding the "who" element of *Exergen*, CAS identified the inventors who signed the Declaration - Gary D. Lewis, Melville C. Stewart, II, and Wayne P. Messing. [Doc. No. 12, ¶14]. As to the "what" and "how" elements of the *Exergen* analysis, CAS argues as follows:

> Presumably, Somanetics will agree that the declaration is false because it claims priority to U.S. Patent No. 4,570,638 ("the '638 Patent"), while the specification of the '235 Patent states only that the '638 Patent is related to the '235 Patent. If the '235 declaration is true, then the '235 Patent expired along with the '638 Patent on March 29, 2009. If that is not Somanetics' contention, then the '235 declaration which claims priority to the '638 Patent is false. *See* Pleadings, ¶¶13-14. Submissions of false declarations have been found to be inequitable conduct which result in the unenforceability of a patent, and that is "how" the false declaration is material to the patentability of the '235 Patent claims.

[Def.'s Br., Doc. No. 28, p.13].

The Court agrees, in light of several Federal Circuit opinions holding that such affidavits are inherently material to the patent prosecution process. *See, e.g., Refact Int'l Ltd. v. Lotus Dev.*

13

*Corp.*, 81 F.3d 1576, 1583 (Fed. Cir. 1996); *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007). Somanetics' arguments to the contrary lack merit.

   II. Defendant's Antitrust Counterclaims.

CAS alleges, in four counterclaims, that Somanetics committed antitrust violations. [Doc. No. 12, pp.17-21]. Somanetics argues that these counterclaims should be dismissed pursuant to Rule 12(b)(6). [*See* Pl.'s Br., Doc. No. 22, pp.10-13]. The Court disagrees.

Generally, the enforcement of a patent through litigation is immunized from antitrust liability. *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1375 (Fed. Cir. 2004). Two exceptions to this general rule exist, however. First, a patentee who brings an infringement action may incur antitrust liability if the alleged infringer proves that the asserted patent was obtained through knowing and willful fraud on the PTO - known as a *Walker Process* claim. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998). Second, a patentee may be subject to antitrust liability under the "sham" litigation exception if the infringement action is "a mere sham to cover what is actually nothing more than an attempt to interfere with the business relationships of a competitor." *Id*. Upon meeting one - or both - of these exceptions, an alleged infringer must still prove the substantive elements of an antitrust violation under Section 2 of the Sherman Act. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007).

   A. The *Walker Process* Counterclaims.

In Counts I and II of CAS's counterclaim, CAS advances two *Walker Process* claims - one for monopolization and one for attempted monopolization. [Doc. No. 12, pp.17-19]. Somanetics' argument for dismissal of these counterclaims is as follows:

> CAS bases its *Walker Process* counterclaims upon the same factual allegations as its inequitable conduct defenses. As explained above [in Somanetics' motion to strike CAS's allegations of inequitable conduct], CAS failed to plead sufficient facts to satisfy Rule 9(b) with respect to. . . inequitable conduct. And, since the common law fraud component of a *Walker Process* claim must be pleaded with the same specificity under Rule 9(b) as an inequitable conduct defense, CAS has likewise failed to sufficiently plead common law fraud.

[Pl.'s Br., Doc. No. 22, pp.11-12].

As explained *supra*, however, the Court holds that CAS's inequitable conduct allegations *were* adequately pled under Rule 9(b). As Somanetics' argument regarding the inequitable conduct allegations fail, Somanetics' *Walker Process* arguments - which are supported by the same conduct as are the inequitable conduct allegations - also fail.

### B. The "Sham" Litigation Counterclaims.

In Counts III and IV of CAS's counterclaim, CAS advances two "sham" litigation claims - one for monopolization and one for attempted monopolization. [Doc. No. 12, pp.19-21]. Somanetics argues that these counterclaims should be dismissed, as "CAS's pleading provides nothing more than a formulaic recitation of the elements of the claim." [Pl.'s Br., Doc. No. 22, p.12 (internal quotations and brackets omitted)]. The Court disagrees.

To be considered "sham" litigation, the Supreme Court requires the following:

> We now outline a two-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. . . Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental *process* - as opposed to the *outcome* of that process - as an anticompetitive weapon. This two-tiered process requires the plaintiff to disprove the challenged lawsuits *legal* viability before the court will entertain evidence of the suit's *economic* viability.

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61

(1993) (emphasis in original) (internal citations and quotations omitted).

CAS's pleadings meet both prongs of this test. As CAS argues in its response brief, the following satisfies the first prong of the *Professional Real Estate Investors* analysis:

> CAS alleges that Somanetics' lawsuit is objectively baseless because Somanetics asserts the '034 Patent, the '235 Patent, and the '065 Patent, which it knows are invalid, not infringed, and/or unenforceable. . . . CAS alleges that the '235 Patent is unenforceable due to inequitable conduct resulting from the submission of a false declaration, and if this is not the case, then the '235 Patent is unenforceable because it expired. An examination of CAS's Fore-Sight ® monitor and sensors, which Somanetics undoubtedly undertook prior to bringing suit, would have led to the obvious conclusion that they do not infringe the '034 Patent. As discussed [in its brief section outlining inequitable conduct arguments], CAS has sufficiently alleged at least four ways by which the '065 Patent is unenforceable due to Somanetics' inequitable conduct. . . .

[Def.'s Br., Doc. No. 28, pp.15-16 (internal citations omitted)]. Further, both of CAS's "sham" litigation counterclaims allege that Somanetics brought this suit intending that the process - as opposed to the outcome - would interfere with CAS's business relationships. [*See* Doc. No. 12, ¶¶89, 95]. Nothing more is required to state valid claims for "sham" litigation under *Professional Real Estate Investors*, and Somanetics' arguments to the contrary lack merit.

III. Defendant's Allegations of Patent Misuse and Unclean Hands.

In paragraphs 7 and 8 of its affirmative defenses, CAS asserts the affirmative defenses of patent misuse and of unclean hands. [Doc. No. 12, p.5]. Somanetics argues that these affirmative defenses must be stricken "because they are based entirely on CAS's inequitable conduct defenses and antitrust counterclaims, none of which were sufficiently pleaded under the applicable standard[s]." [Pl.'s Reply Br., Doc. No. 29, p.5 (internal quotation omitted)]. As explained *supra*, the Court disagrees, and holds that CAS has sufficiently pled its claims of inequitable conduct and antitrust violations. Somanetics' arguments regarding CAS's patent

misuse and unclean hands affirmative defenses lack merit, and Somanetics' motion is **DENIED**.

CONCLUSION

For the reasons explained above, the Court **DENIES** Somanetics' motion to strike CAS's affirmative defenses and to dismiss CAS's counterclaims [Doc. No. 22].

**IT IS SO ORDERED**.


s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 26, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 26, 2010, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager